**PARLANE SPORTSWEAR COMPANY, INC., Plaintiff,**

v.

**Caspar WEINBERGER, as he is Secretary of Health, Education and Welfare and Trustees of Tufts College, a/k/a Tufts University, Defendants.**

Civ. A. No. 74-375-C.

United States District Court,
D. Massachusetts.

Sept. 4, 1974.

Evan T. Lawson, Boston, Mass., for plaintiff.

Nutter, McClennan & Fish, Patrick F. Brady, Craig E. Stewart, Boston, Mass., for defendant Tufts.

Marshall D. Stein, Asst. U.S. Atty., Boston, Mass., for defendant Weinberger.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge, Sitting by Designation.

The plaintiff, in order to operate its clothing manufacturing business, had been leasing several floors of a building belonging to Tufts University (Tufts), which is a privately owned and operated educational institution in Massachusetts. Tufts applied for and was awarded grants of more than one million dollars by appropriate representatives of the Secretary of the Department of Health, Education and Welfare (HEW) in order that Tufts might establish and conduct a Cancer Research Center.

Upon receipt of such grant, Tufts decided that the facilities then occupied by the plaintiff would be needed in order to provide adequate housing for the cancer research project, and Tufts thereupon ordered the plaintiff to vacate such premises, the term of the lease previously having expired. Eviction proceedings are currently in progress, and the mandatory move to new quarters will understandably result in expense to the plaintiff.

The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 et seq. (the Act), provides for payments by the United States Government to compensate persons required to vacate premises needed for certain federally financed projects. The plaintiff contends that it is entitled to such compensation, and it applied accordingly to HEW. Upon being refused by that agency, the plaintiff seeks in this action a declaratory judgment that it is entitled to relocation assistance as provided in the Act. Defendants Tufts and HEW have countered with motions to dismiss on the ground that the Act does not benefit the plaintiff under the circumstances here concerned. For reasons hereinafter set forth, the plaintiff's motion for summary judgment will be denied and the defendants' motions to dismiss granted.

It is clear from a reading of the Act that the plaintiff would have been entitled to certain payments to help cover the costs of relocation if its eviction had stemmed from the need of a Federal agency to use the property for one of its own projects. It is equally evident that similar compensation would be payable if the plaintiff had been displaced by an agency of the Commonwealth of Massachusetts in order to accommodate one of its projects for which it was receiving Federal financial assistance. Here, the evicting agency is a non-governmental entity that wants the premises in order to carry out a program of its own that is financed by a Federal grant. The issue is whether the Act provides relocation assistance to a business that is evicted under these circumstances.

The policy of Congress in enacting the legislation here concerned is set out in 42 U.S.C. § 4621:

"The purpose of this subchapter is to establish a uniform policy for the

fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole."

Such a declaration expresses a clear intention to assist *all* persons displaced because of the need to accommodate federally financed programs, whether such programs are conducted by the Federal Government, an agency of a State, or a private institution. This intent is again manifested in § 4601(6) which defines "displaced persons," which are the target beneficiaries of the legislation, as being " . . . any person who . . . moves from real property . . . as the result of the written order of the acquiring agency to vacate real property [,] for a program or project undertaken by a Federal agency, or with Federal financial assistance; . . . ." According to § 4601(4) " 'Federal financial assistance' means a grant, loan, or contribution provided by the United States, . . . ."

Unfortunately for the plaintiff, the broad expression of congressional intention to compensate *all* persons displaced by federally funded projects is much more narrowly implemented in the operational sections of the Act.

Sections 4622, 4627 and 4628 direct that displacement payments be made when the real property is acquired " . . . for a program or project undertaken by a Federal agency".[1]

Relief for persons displaced by action of a State agency that is seeking a grant or contract "under which Federal financial assistance will be available," is contained in § 4630. It requires the head of a Federal agency to refrain from approving a grant to a State unless he receives satisfactory assurance that the relocation payments provided for by the Act will be accorded.

Nowhere in the statute is there any operational provision calling for payments to a person, such as the plaintiff, who is displaced by a private entity that has a grant of Federal financial assistance for its project. On the contrary, the wording of the statute appears to as-

---

1. Section 4622(a) reads as follows:
"(a) Whenever the acquisition of real property for a program or project undertaken by a Federal agency in any State will result in the displacement of any person on or after January 2, 1971, the head of such agency shall make a payment to any displaced person, upon proper application as approved by such agency head, for—
(1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;
(2) actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency; and
(3) actual reasonable expenses in searching for a replacement business or farm."
Subsections (b) and (c) prescribe the amounts of the payments to be made:
"§ 4627. State required to furnish real property incident to Federal assistance (local cooperation)
Whenever real property is acquired by a State agency and furnished as a required

contribution incident to a Federal program or project, the Federal agency having authority over the program or project may not accept such property unless such State agency has made all payments and provided all assistance and assurances, as are required of a State agency by sections 4630 and 4655 of this title. Such State agency shall pay the cost of such requirements in the same manner and to the same extent as the real property acquired for such project, except that in the case of any real property acquisition or displacement occurring prior to July 1, 1972, such Federal agency shall pay 100 per centum of the first $25,000 of the cost of providing such payments and assistance."
"§ 4628. State acting as agent for Federal program
Whenever real property is acquired by a State agency at the request of a Federal agency for a Federal program or project, such acquisition shall, for the purposes of this chapter, be deemed an acquisition by the Federal agency having authority over such program or project."

sume that all "displaced persons" covered by the Act are evicted either because of projects of Federal agencies or because of projects by State agencies receiving Federal financial assistance. For example:

(a) Section 4633(a) provides that the heads of Federal agencies concerned with Federal projects "or . . . projects by State agencies receiving Federal financial assistance," shall consult together toward the implementation of regulations and procedures for relocation assistance.

(b) Section 4633(b)(3) provides that any complaints with respect to eligibility determinations or payments of relocation assistance shall be reviewed " . . . by the head of the Federal agency having authority over the applicable program or project, or in the case of a program or project receiving Federal financial assistance, by the head of the State agency."

(c) Section 4625(b) requires that "Federal agencies administering programs which may be of assistance to displaced persons covered by this chapter shall cooperate to the maximum extent feasible with the Federal or State agency causing the displacement to insure that such displaced persons receive the maximum assistance available to them."

This same concept that would limit the coverage of the Act to persons evicted because of projects operated by Federal or State governmental entities is expressed in the legislative history. House Report No. 91–1656, 91 Cong., 2d Sess. (1970), U.S.Code Cong. & Admin. News, 5850, 5853, refers to the term "displaced person" to mean any person required to vacate property "for a program or project undertaken by a Federal agency, or by a State agency with Federal financial assistance."

The plaintiff is no less injured by the fact that the entity that brings about its eviction is a private institution, rather than a State or Federal agency. However, in the absence of an operational provision in the Act authorizing payment to a person in the position of the plaintiff, I do not see how the Secretary of HEW would be justified in allowing the plaintiff's claim. This case points up the need for corrective legislation if the generous intention expressed by Congress in the Act is to be given full implementation.

By separate judgment filed contemporaneously herewith, the plaintiff's motion for summary judgment will be denied and the motions of the defendants that the action be dismissed will be granted.