Gloria CONWAY, Individually and on behalf of all other persons similarly situated, Plaintiffs-Appellants,

v.

Patricia HARRIS, et al., Defendants-Appellees.

No. 78–1473.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1978.

Decided Nov. 13, 1978.

Lawrence G. Albrecht and Thomas P. Donegan, Milwaukee, Wis., for plaintiffs-appellants.

Bruce G. Forrest, Civil Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and TONE and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant Gloria Conway appeals from the district court's dismissal of her complaint for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On behalf of herself and all other persons similarly situated, plaintiff alleged in her complaint that she was unlawfully denied assistance and service benefits provided by the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601, *et seq.* (Uniform Relocation Act or URA).

The facts of this case are not contested. The plaintiff was a tenant in a small apartment building in Waukesha, Wisconsin, and on March 15, 1977, she and other tenants received a 60-day eviction notice from their landlord. On March 30, 1977, the tenants received another letter from another private party, Architektur-80, advising them that this firm had optioned the property on which the tenants' residences were situated and that financing for the development of a senior citizens' housing project had been approved. Apparently Architektur-80 and the Wisconsin Housing Finance Agency

(HFA) had already signed an agreement, which was later approved by the Department of Housing and Urban Development (HUD), wherein the parties contracted that the new owner would receive Section 8 housing assistance payments following completion of the new housing construction. Some time after the plaintiff moved, the apartment building was taken down and a new 43-unit, Section 8 housing project for the elderly was constructed.

Counsel for plaintiff requested in a May, 1977, letter to the Milwaukee Area Department of Housing and Urban Development that full URA benefits be granted the tenants who were being displaced by construction of the Section 8 project. Shortly thereafter the HUD Milwaukee Area Director responded that persons displaced due to a private Section 8 project were not eligible to receive benefits under the Uniform Relocation Act.

The Section 8 program was established by Congress as part of the omnibus Housing and Community Development Act of 1974, 42 U.S.C. § 1437, et seq., and was created to alleviate the acute shortage of decent, safe and sanitary dwellings for lower income families. To fulfill the mandate of this Act, Congress authorized the Secretary of the Department of Housing and Urban Development to provide financial assistance[1] to owners[2] or prospective owners who agree to construct or substantially rehabilitate housing for lower income families.

Relying on the recommendations of HUD, Congress designed the Section 8 program to provide a profit incentive for private developers to participate in the construction and management of lower income housing by using monthly housing assistance payments.[3] S.Rep.No.93–693, 93d Cong., 2d

Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 4273, 4275. One means, and the one used here, by which HUD furnishes rental subsidies directly to housing owners on behalf of the tenants is contracting with a State Housing Finance Agency (HFA) for the HFA to administer the program throughout its jurisdiction. The intermediary HFA then contracts with private owners.

In the district court plaintiff sought declaratory relief establishing her right to relocation assistance and services under the Uniform Relocation Act. She also asked for injunctive relief enjoining defendants from following those provisions of the Code of Federal Regulations which precluded the plaintiff from receiving benefits under URA. Contending that the purposes of the Uniform Relocation Act were contravened, plaintiff specifically objected to the regulations set forth in 24 C.F.R. § 880.113(b) and 24 C.F.R. § 883.210(b) which require that relocation and assistance payments be provided if the owner of a new project is a Public Housing Authority (PHA). The regulations, however, contain no comparable requirement in the case of either a privately owned project or a private owner/PHA project.

Relying on statutory construction, legislative history, and case law, the district court found that persons displaced by real property acquisition undertaken by private parties for projects which receive federal assistance are not entitled to the benefits established in the Uniform Relocation Act. We affirm.

On appeal the issue presented is whether a person dispossessed from real property by a private acquisition, which leads to the construction of a Section 8 housing project

---

1. Federal financial assistance is defined by 42 U.S.C. § 4601(4) as "a grant, loan, or contribution provided by the United States, except any Federal guarantee or insurance and any annual payment or capital loan to the District of Columbia."

2. "Owner" as defined in 42 U.S.C. § 1437f(f)(4) includes an entity, a public housing agency or a private person.

3. Basically these payments subsidize the owner with the difference between the fair market value of the rental unit and approximately 25 percent of the renter's monthly income. 42 U.S.C. § 1437f(b)(2) and (c)(3); 24 C.F.R. §§ 883.204, 883.205, 883.206. Federal assistance does not begin until the satisfactory completion of housing rehabilitation or construction.

From the record, the developer was to receive only this form of federal assistance.

that upon completion is aided by federal financial assistance through rent subsidy payments, is a "displaced person" under 42 U.S.C. § 4601(6) entitled to Uniform Relocation Act benefits.

## I.

In 1971, Congress enacted the Uniform Relocation Act and declared:

> The purpose of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole.

46 U.S.C. § 4621. In following that far-reaching policy statement, plaintiff urges that we afford her benefits [4] as a "displaced person" who in 42 U.S.C. § 4601(6) is defined as "any person who . . . moves from real property . . . as a result of the acquisition of such real property . . . or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance . . . ." [5] Under this section plaintiff claims that she was forced to move from her apartment as a result of the acquisition of real property for a program or project undertaken either by a federal agency or with federal financial assistance. We disagree with the plaintiff as we cannot disregard the plain meaning

of the Act's operational sections that govern the scope of eligibility.

The Eighth Circuit in *Moorer v. Department of Housing and Urban Development*, 561 F.2d 175 (8th Cir. 1977), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978), considered the same issue of statutory construction that we face here. Discussing the operational sections of the Act in regard to a Section 236 housing project of the National Housing Act, the *Moorer* court stated:

> The statute mandates that benefits shall be extended to persons displaced by real property acquisition *when the real property is acquired "for a program or project undertaken by a Federal agency"* (§ 4622(a)) or *"[w]henever real property is acquired by a State agency . . . ."* (§§ 4627, 4628). Under § 4630 benefits inure *when a person is displaced by action of a State agency operating with a grant "under which Federal financial assistance will be available . . . ."* We are therefore drawn to the conclusion that the plain statutory language indicates that the URA benefits are available to displaced persons only on projects undertaken by federal agencies or by state agencies receiving federal financial assistance.

> This conclusion is supported by other sections of the statute. Section 4633(a) provides that the *heads of federal agencies concerned with federal projects "or programs or projects by State agencies*

---

**4.** Plaintiff contends displaced persons who qualify for relocation assistance are entitled to the following benefits: (1) actual reasonable *moving expenses*, 42 U.S.C. § 4622(a), or a moving expense allowance not exceeding $300 and a dislocation allowance of $200, *id.* § 4622(b); (2) *payment of an amount not to exceed $4,000 up to a four-year period to compensate the displaced person for any increase in rent she pays for her replacement dwelling, id.* § 4624(*1*), or the amount necessary to make a downpayment on a replacement dwelling not to exceed $4,000, *id.* § 4624(2); (3) a *relocation advisory service* to aid her to locate comparable replacement housing, *id.* § 4625; and (4) if none of the previous provisions succeed in assuring a replacement dwelling, HUD must act as the houser of last resort, *id.* § 4626.

**5.** 42 U.S.C. § 4601(6) reads in full:

> The term "displaced person" means any person who, on or after January 2, 1971, moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance; and solely for the purposes of sections 4622(a) and (b) and 4625 of this title, as a result of the acquisition of or as the result of the written order of the acquiring agency to vacate other real property, on which such person conducts a business or farm operation, for such program or project.

*receiving Federal financial assistance . . . shall consult together on the establishment of regulations and procedures for the implementation of [programs for relocation assistance]."* Section 4633(b)[3] provides

> that any person aggrieved by a determination as to eligibility for a payment authorized by this chapter, or the amount of a payment, may have his application reviewed *by the head of the Federal agency having authority over the applicable program or project, or in the case of a program or project receiving Federal financial assistance, by the head of the State agency.*

In addition, § 4625(b) provides:

> (b) Federal agencies administering programs which may be of assistance to displaced persons covered by this chapter shall cooperate to the maximum extent feasible with the *Federal or State agency causing the displacement* to assure that such displaced persons receive the maximum assistance available to them.

561 F.2d at 178–79 (footnotes omitted) (emphasis added).

Clearly, no section provides that benefits should be extended to a person such as the plaintiff who was displaced by the acquisition of real property by a private party who would receive federal assistance in the future. *Parlane Sportswear Co. v. Weinberger,* 381 F.Supp. 410, 412 (D.Mass.1974), *aff'd* 513 F.2d 835 (1st Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 252 (1975). In the present case a federal agency such as HUD neither acquired the real property nor gave the plaintiff written notice of her eviction for the construction of a federal housing project. *See* 381 F.Supp. at 411. Furthermore, this is not a case where the Wisconsin Housing Finance Agency acquired the property or gave written notice of eviction to the plaintiff for the construction of a state housing project for which the state received federal financial aid. *Id.* This court is not deciding those cases today.

From the language of the implementing sections of the Act, we agree with the Eighth Circuit that Congress intended to provide URA assistance only to persons displaced by projects undertaken by federal agencies or by state agencies receiving federal financial assistance. *Moorer,* 561 F.2d at 176–77. We will leave any extension of the statute to Congress.

II.

Plaintiff argues this case is one of first impression and not governed by other judicial decisions interpreting the coverage of the Uniform Relocation Act. We cannot accept that contention. Although this is the first time this court has considered the circumstances where a person was displaced by a Section 8 housing project, the question of law presented here is not novel as other courts have already determined the applicability of the Uniform Relocation Act to similar privately developed housing projects.

The Eighth Circuit in *Moorer v. Department of Housing and Urban Development* held that tenants, who were dispossessed from their apartment buildings by private acquisitions of real property, were not "displaced persons" entitled to benefits under the Uniform Relocation Act. Through HUD's Project Rehab, the defendant American Development Corporation (ADC) was rehabilitating existing structures to provide adequate housing for low and moderate income persons and was aided by federal financial assistance in the form of rent subsidy and interest payments and mortgage insurance under Section 236 of the National Housing Act. 561 F.2d at 177.

The court of appeals found that the emphasis in the legislative history "was on the acquisition of real property by federal or federally assisted programs through eminent domain procedures." *Id.* at 181. The court concluded:

> The URA was intended to benefit those displaced in public agencies with coercive acquisition power, such as eminent domain. It was intended to benefit individuals who were not willing sellers. Project Rehab played a significant role in procuring Section 236 benefits for ADC. However, as mentioned elsewhere in this

opinion, ADC acquired the property by negotiation with the sellers. ADC is a private entity without power of eminent domain. Therefore, we conclude the appropriate inquiry in determining whether URA benefits attach in this case is: Was the real property acquired by a governmental entity with the power of eminent domain. *The focus is not on the degree of involvement by a federal or state agency, or a program of such agency, which results in the acquisition, but is instead on whether the person involved was displaced by governmental action either acquiring the property or issuing an order to vacate the property.* Neither situation is present in this case.

561 F.2d at 182–83 (footnote omitted) (emphasis added).[6] *See also Dawson v. Department of Housing & Urban Development,* 428 F.Supp. 328 (N.D.Ga.1976).

The First Circuit in *Parlane Sportswear Co. v. Weinberger,* 513 F.2d 835 (1st Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 252 (1975), also decided the issue of whether the Uniform Relocation Act provides benefits to persons displaced by a private entity receiving federal financial assistance. In that case the Department of Health, Education and Welfare (HEW) provided Tufts University, a private institution, with large federal grants for a Cancer Research Center. A manufacturer who was evicted by the project brought suit seeking relocation assistance under the Act. From the district court's dismissal of the complaint, the court affirmed on appeal declaring:

> *The statute extends assistance to persons displaced by the acquisition of real property "for a program or project undertaken by a Federal agency,"* 42 U.S.C.

§ 4622(a). HEW's regulations refer to "direct projects of the Department," 45 C.F.R. 515.5(a), and deny aid to persons displaced by federally assisted projects of private entities, 45 C.F.R. § 15.6. We find no compelling indications that HEW's contemporaneous construction of the statute is wrong.

513 F.2d at 836–37 (emphasis added).

In this case the private entity Architektur-80 acquired the property from a private party, and a private entity issued the plaintiff a written order to vacate the premises. Thus plaintiff plainly fails both the acquisition and notice tests of 42 U.S.C. § 4601(6). Architektur-80 negotiated with the Wisconsin Housing Finance Authority so that following the completion of the new housing project for the elderly, Architektur-80 would receive Section 8 rental assistance payments from HUD. These facts demonstrate a series of private, not governmental, decisions. Although there is some degree of federal and state involvement, we must reject plaintiff's fanciful causation theory that the federal government somehow acquired the property.

For the above reasons, the decision of the district court is affirmed.

---

**6.** Plaintiff argues that *Moorer's* eminent domain eligibility test is disputed by our recent decision in *Alexander v. U. S. Department of Housing and Urban Development,* 555 F.2d 166 (7th Cir. 1977), *cert. granted,* — · U.S. —·—, 98 S.Ct. 3087, 57 L.Ed.2d 1132 (1978). In that case, however, we decided that URA benefits were inapplicable to the closing of a failed public housing project and we noted:

Several cases have discussed the eligibility aspects of URA. . . . Further, a person displaced by a project undertaken by a private institution receiving federal financial assistance for that project was found ineligible to receive relocation benefits. *Parlane Sportswear Co. v. Weinberger* . . . . 555 F.2d at 168 69.