FARMER, Judge.
When the Florida State Department of Transportation [DOT] constructed interstate highway 595 [1-595] in western Bro-ward County, it acquired the necessary land along the state road 84 corridor from adjoining property owners, among which included Forman’s Dairy Palm Nursery [Nursery] and an adjoining cemetery.[1] DOT fully paid Nursery for the 1-595 land acquisition itself, as well as for the related relocation of roads and drainage facilities and for trees on the acquired land. DOT also paid Nursery for the trees that had to be moved from land remaining to it and the cemetery because of the relocation of roads and drainage.
Nursery claimed, however, that it is still owed a relocation expense for its remaining trees. It contended that the land acquisition by DOT caused the adjoining cemetery to reclaim land being used by Nursery, and the effect of these takings and relocations has been effectually to put it out of business. In a final order, DOT decided that Nursery has been paid all it is entitled to receive for the 1-595 project, specifically denying any compensation for the loss of any of Nursery’s remaining trees, saying:
“[w]hile the evidence established that the Nursery will probably be unable to function profitably after the return of the reclaimed land to the Cemetery Company, [Nursery] has not established that DOT should bear the responsibility for the return of that property.”
We reverse.
DOT based its decision on a conclusion that Nursery is not a “displaced person” within the meaning of applicable state and federal statutes on the date of Nursery’s application for relocation expenses.[2] We disagree. The applicable state law is section 421.55, Florida Statutes (1987), which provided[3] in pertinent part:
It is the intent of the Legislature to authorize the state and its * * * agencies * * * to comply with the provisions and requirements of the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public *78 Law 91-646, in those public projects or programs for which federal or federal-aid funds are available and are used.
Section 421.55(1), Fla.Stat. (1987). The statute also defined a “displaced person” as:
any individual, partnership, corporation, or association that is required to move from any real property on or after March 20, 1972, as a result of the acquisition of such real property for public purposes, or who, as a result of the acquisition for public purposes of real property on which such person is conducting a business or farm operation as defined in Public Law 91-646, is required to move said business or farm operation.
Section 421.55(2)(c), Fla.Stat. (1987). The general right under federal law to the claimed expenses is contained, as section 421.55(1) says, in the following:
§ 4622. Moving and Related Expenses
(a) General Provision
Whenever the acquisition of real property for a program or project undertaken by a Federal agency in any State will result in the displacement of any person on or after January 2, 1971, the head of such agency shall make a payment to any displaced person, upon proper application as approved by such agency head, for—
[[Image here]]
(2) actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency * * *.
42 U.S.C. § 4622(a)(2) (1971). Applicable federal law defines a “displaced person” as:
any person who, on or after January 2, 1971, moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, * * * for a program or project undertaken by a Federal agency or with Federal financial assistance; and solely for the purposes of sections 4622(a) and (b) and 4625 of this title, as a result of the acquisition of or as the result of the written order of the acquiring agency to vacate other real property, on which such person conducts a business or farm operation, for such program or project.
42 U.S.C. § 4601(6) (1971).[4]
These federal statutory provisions have been followed in turn by regulations adopted by the Secretary of Transportation and promulgated in the Federal Register. One of the regulations defines a “displaced person” as:
any person * * * who moves from the real property or moves his personal property from the real property:
******
(iii) As a result of the Agency’s acquisition of, or a written order to vacate, for a project, other real property on which the person conducts a business or farm operation. Eligibility as a displaced person under this subparagraph applies only for purposes of obtaining relocation * * * moving expenses under * * * § 25.303.
49 C.F.R. § 25.2(f) (10/1/87 ed.). Section 25.303 provides as follows:
(a) Eligible Costs. Any business or farm operation which qualifies as a displaced person * * * is entitled to payment for such actual moving and related expenses, as the Agency determines to be reasonable and necessary, including expenses for:
******
(10) Actual direct loss of tangible personal property incurred as a result of *79 moving or discontinuing the business or farm operation.
49 C.F.R. § 25.303(a)(10) (10/1/87 ed.)
We think that DOT has read these provisions contrary to their precise terms and out of harmony with their essential purpose. Turning first to the principal federal legislation, section 4622(a)(2) plainly entitles a displacee to receive payment for the loss of personalty resulting from the discontinuance of a farm operation. The term “direct” in that subsection is tied to the discontinuance of the operation, not to the acquisition of real property. In other words, the elements necessary for entitlement under this statute are (1) the acquisition of real property for a federally financed project which results (not necessarily directly) in a displacement; and (2) the loss of personal property caused by that acquisition and directly attributable to the cessation of a business or farm operation.
This is also the meaning of the federal statutory definition of a “displaced person.” Essentially, section 4601(6) considers any person displaced who moves personal property as a result of an acquisition of real property for a federally financed project, on which the person conducts a business or farm operation. The land acquired need not be owned by the displaced person; rather it is merely necessary that the displacee conduct a business or farm operation on some part of the acquired land. Thus, if a displacee operates a farm on someone else’s real property — e.g., under a lease or, as here, a deed reservation — some of which is acquired for the project, and the displacee is forced to discontinue the farm and thereby lose personal property, then the displacee is entitled to compensation.[5]
As applied to the facts found by the hearing examiner in this case, these provisions amount to the legal conclusion that, for purposes of section 25.303(a)(10) eligible costs, Nursery did fit within the meaning of displaced person as regards the trees remaining on property left to the Nursery for its farm operations after the acquisition of its land, after the acquisition of the land from the cemetery, and after the necessary relocation of roads and drainage facilities caused by the acquisitions.
The mere fact that Nursery’s available land was reduced by the reclamation of deed reservation land by the cemetery does not compel the conclusion that relocation benefits are categorically unavailable to Nursery. We discern from these statutes and regulations an intent to compensate dislocated businesses, where the dislocation comes only indirectly from the federally financed land acquisition — i.e., where there is an intervening step of conduct by a third party. It is obvious to us that Congress intended to provide federal compensation to farms or businesses dislocated because a federal project causes their landlord, or other person in a functionally identical role, to end a tenant’s, or licensee’s, or easement holder’s, use of some of the property acquired by the agency.
DOT’s concentration on the fact that the cemetery, not DOT, reclaimed the land is too narrow. The hearing examiner found that the cemetery’s notice to Nursery to reclaim the land directly attributed the reclamation to DOT’s acquisition of land for I-595 and that the land reclaimed by the cemetery was among Nursery’s “most productive acreage.”[6] He also found that the relocation of roads had changed the access to the Nursery and made it much more difficult, and that the loss of available, cultivatable acreage to Nursery had taken from it economies of scale (which equal profitability) thát it previously had enjoyed.
We cannot agree with the broadly categorical reading that DOT gave to Conway v. Harris, 586 F.2d 1137 (7th Cir.1978), and *80 Moorer v. Department of Housing and Urban Development, 561 F.2d 175 (8th Cir.1977), cert. denied, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978). Neither of these cases stand for the proposition attributed to them by DOT, viz., that relocation assistance is not available to persons displaced by the actions of a third party.
In Conway, the issue was whether tenants dispossessed from real property by reason of a private acquisition, which leads to construction of a federally funded housing project for the elderly by the private buyer, can qualify as displaced persons within the meaning of the above statutes. The court impliedly assumes that if the tenants had been dispossessed by an agency under the same circumstances, they would have qualified. Similarly, in Moorer the court held that persons whose dislocation resulted from a private, non-coercive acquisition (i.e., not an eminent domain acquisition) could not receive relocation assistance unless the displaced person had resided in a Model Cities, Urban Renewal or Neighborhood Development Program covered by 42 U.S.C. § 4637. Neither decision can be fairly read to mean that relocation expenses are categorically unavailable to one whose farm business is lost because he is displaced from land which he cultivated under an agreement with its owner who, in turn, reclaimed it on account of an acquisition by the agency.
We stress that it is the categorical nature of DOT’s legal conclusions that we find in error. The statutes and regulations do not appear to us to make relocation benefits turn on whether the land acquisition has been total or partial. Plainly they contemplate such benefits even for partial acquisitions and even, still, of somebody else’s land. At the same time, we can also see logic in DOT’s position here that “the cost of moving the entire [e.s;] nursery has not been shown to be necessary and * * * related to the displacement by DOT.”
On remand, the agency shall reconsider Nursery’s claim free from its all-or-nothing reading of the statutes and regulations. Taking whatever additional evidence is required by the circumstances, DOT shall determine the nature and extent to which the loss of Nursery’s ability to profitably operate prospectively is due to the acquisition of land for 1-595 from both the Nursery and the cemetery, the extent to which the reclamation by the cemetery attributable to the 1-595 land acquisition has caused Nursery to cease farm operations, the number of remaining trees reasonably and necessarily lost, and the amount required to compensate Nursery therefor under section 24.303(a)(10).
REVERSED AND REMANDED.
LETTS and WARNER, JJ., concur.

. The cemetery had originally purchased its land from Nursery, subject to a deed reservation allowing Nursery the use of cemetery’s property for the cultivation of trees until cemetery needed the land for its own use.

. Nursery’s claim was submitted to DOT May 5, 1988. The parties stipulated that the federal law in effect on the date of the claim would control.

.The legislature amended section 421.55 in 1989 to conform to changes made by the 1987 amendments to the federal law. See Ch. 89-209, Laws of Florida. Because of the stipulation of the parties as to the applicable law, we need not consider either of the amended federal or state statutes.

. Both of the above federal statutes began as part of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646. That Act was changed to its present form by the Surface Transportation and Uniform Relocation Assistance Act of 1987, Public Law 100-17, the pertinent statutory provisions of which did not become effective until April 1989.

. This meaning is also illustrated by the regulation. Under section 25.2(f)(iii), a person is considered displaced who moves personal property from other DOT acquired real property on which the person carried on farming activities.

. Although the hearing examiner found no competent evidence in the record to establish when the cemetery might have reclaimed the land if none of its land had been taken for 1-595, that lack does not denigrate Nursery’s showing that the cemetery directly attributed the reclamation to the taking.