**Buck AUSTIN et al.,**
**Plaintiffs–Appellants,**

v.

**Cecil D. ANDRUS, Secretary of the Interior et al., Defendants–Appellees.**

No. 78–1896.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1980.

Decided Feb. 2, 1981.

Robert L. Miller, Flagstaff, Ariz., for plaintiffs–appellants.

Maria Iizuka, Dept. of Justice, Washington, D.C., for defendants–appellees.

Before MERRILL, Senior Circuit Judge, POOLE, Circuit Judge, and BROWN,* Senior District Judge.

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

**114**

POOLE, Circuit Judge:

Members of the Navajo Indian tribe forced to relocate because of mining activities on their reservation appeal from orders dismissing their complaint and granting the federal defendants summary judgment on the issue whether plaintiffs are entitled to assistance as "displaced persons" within the meaning of the Uniform Relocation Assistance and Real People Acquisition Policies Act of 1970 (Relocation Act), 84 Stat. 1894, 42 U.S.C. § 4601 *et seq.* Jurisdiction in this court rests on 28 U.S.C. § 1291.

Because the displacement did not result from a written order to vacate or acquisition by a federal agency or state agency receiving federal financial assistance, we affirm the judgment of the district court and hold that plaintiffs are not entitled to assistance as "displaced persons" within the meaning of the Relocation Act, 42 U.S.C. § 4601(6).

*FACTS*

In 1950 Congress enacted the Navajo Hopi Rehabilitation Act, 25 U.S.C. § 631 *et seq.* which provided funds for surveys and studies of coal and other resources on the Navajo and Hopi reservations. The Act authorized the Secretary of the Interior to approve leases of restricted land by the tribes, associations of persons from the tribes, or individual members of the tribes. The Secretary was also empowered to prescribe regulations governing these leases, 25 U.S.C. § 635.

In the 1950's the Bureau of Indian Affairs commissioned a study of mineral resources on the Navajo and Hopi reservations. The resulting report, G. Kiersch, Mineral Resources: Navajo–Hopi Indian Reservations, University of Arizona, College of Mines (Tucson 1955), suggested that coal could be profitably mined on the reservations for use in coal fired power plants.

A Navajo tribal resolution in May 1961 authorized a subsidiary of Peabody Coal Company to explore for minerals on Navajo Reservation lands. In June 1964, the Navajo and Hopi tribes issued a similar permit for exploration of several thousand acres in the Navajo–Hopi Joint Use Area. The Bureau of Indian Affairs approved both permits.

After exploratory drilling, Peabody Coal initiated lease negotiations with representatives of the two tribes. In February 1964 the Navajo Tribe leased Peabody mining rights for several thousand acres within the Navajo Reservation. In June 1966 Peabody entered into a lease with the Navajo and Hopi tribes for mining within the joint use area.

The leases conformed to various federal requirements for mining undertaken on federal lands and were approved by the Department of the Interior. After a mining plan was submitted and approved by the Department, actual mining began in 1970.

The strip mined coal from the reservations was sold by Peabody to two coal fired power plants, the Navajo and Mojave generating stations. The Department of the Interior, Bureau of Reclamation is a participant in the Navajo project and purchases power for the Central Arizona Project, a system designed to deliver water to central Arizona. Although no agency of the federal government is a direct participant in the Mojave Project, participants in the project are alleged to receive indirect federal financing through Bureau of Reclamation subsidies.

Plaintiffs are enrolled members of the Navajo Indian Tribe who live on lands held in trust by the United States for the benefit of the Navajo Tribe, the Hopi Tribe and individual members of both tribes. Plaintiffs alleged they have been, or are about to be displaced by the mining activities of Peabody Coal Company. On June 25, 1975 plaintiffs submitted a claim to the Department of the Interior requesting assistance as "displaced persons" within the meaning of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601(6). Plaintiffs, requested the government to prepare a relocation assistance advisory program and provide other relocation assistance under the Act.

In October 1975, the Department of the Interior rejected plaintiffs' claims on the basis that they did not qualify as "displaced persons" under the Act. Plaintiffs appealed this decision to the Department's Office of hearings and Appeals, which affirmed the rejection of the plaintiffs' claims on March 15, 1976.

Plaintiffs instituted this action on June 18, 1976 in the United States District Court, District of Arizona against the Secretary of the Interior, Cecil Andrus, and other officials of the Department. Plaintiffs requested declaratory judgment that defendants acted in violation of their duties by denying assistance and requested a writ of mandamus requiring defendants to implement a relocation advisory program, make monetary payments, and provide comparable replacement housing pursuant to the Act.

Plaintiffs first claimed that:

1. the leasing of mineral rights by Peabody constituted an "acquisition of real property,"
2. the degree of the government's participation in the development of the mining and participation in the Navajo and Mojave Power Plant Projects made the strip mining part of a program or project undertaken by a federal agency or with federal financial assistance for purposes of the Act,
3. these strip mining operations have caused or will cause the displacement of plaintiffs, and
4. defendant officials of the Department of the Interior, Bureau of Reclamation and Bureau of Indian Affairs have refused to provide assistance to plaintiffs under the Relocation Act.

In a second claim plaintiffs alleged that:

1. they lived on lands held in trust by the United States for the Navajo Tribe or the Navajo and Hopi Tribes and the individual members of both tribes,
2. plaintiffs are owed a fiduciary duty for the protection and care of tribal members and their resources, and
3. defendants as fiduciaries are obligated to provide relocation assistance as provided in the Relocation Act.

In September 1977 plaintiffs filed a motion for summary judgment as to both claims. The motion was supported by affidavits from several of the plaintiffs alleging that they had moved from their homes or would be forced to relocate due to Peabody's mining activities, and that they had received no assistance from the government. The government responded with cross motions to dismiss the complaint or, in the alternative, for summary judgment. The latter motions were supported by the affidavit of the President of Peabody Coal describing the course of the lease negotiations between Peabody Coal and the tribes.

On November 11, 1977, after a hearing, the district court granted summary judgment for the government. In an accompanying memorandum opinion, the court rejected the first claim for relief on the ground that plaintiffs alleged no facts to support a conclusion that Peabody's mining constituted a "Federal program or project" within the meaning of the Relocation Act. The court relied on the reasoning of the Eighth Circuit in *Moorer v. Department of HUD*, 561 F.2d 175 (8th Cir. 1977), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978).

With respect on the second claim for relief, the court found the fiduciary duty owed to plaintiffs as members of their tribe did not enlarge the scope of the statutory definition of "displaced person" in the Relocation Act. Plaintiffs' motion for relief from the judgment was denied. Final judgment dismissing the complaint and action was entered on January 20, 1978. Plaintiffs now appeal.

*ANALYSIS*

The issue involves construction of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Relocation Act), 84 Stat. 1894, 42 U.S.C. § 4601 *et seq.* To be eligible for assistance, appellants must qualify as "displaced persons" which is defined in Section 101(6) of the Act as

any person who, on or after January 2, 1971 moves from real property, or who moves his personal property, as a result of the acquisition of such real property, in a whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance. 42 U.S.C. § 4601(6)

The scope of this definition was addressed by the Supreme Court in *Alexander v. U.S. Dept. of H.U.D.*, 441 U.S. 39, 99 S.Ct. 1572, 60 L.Ed.2d 28 (1978). The Court held that to be eligible for assistance as a displaced person under the Act, an individual could "satisfy either the 'acquisition' or 'written order' clause of the definition." 441 U.S. at 43, 99 S.Ct. at 1577.

In *Alexander*, eligibility turned on the interpretation of the "written order clause" and the Court did not reach the scope of coverage under the "acquisition" clause of § 101(6). 441 U.S. at 47, 99 S.Ct. at 1579. In a footnote, however, the Court pointed out that lower federal courts had interpreted the "acquisition clause" to exclude displacements caused by private entities.

> In its entirety, this phrase [for a program or project] encompasses any "program or project undertaken by a Federal agency, or with Federal financial assistance." § 101(6), 42 U.S.C. § 4601(6). Lower federal courts have interpreted the latter part of this phrase to include only federally assisted "programs or projects" undertaken by agencies of state and local governments, as opposed to private parties. See *Moorer v. Dept. of HUD*, 561 F.2d 175 (CA8 1977), cert. denied, 436 U.S. 919 [98 S.Ct. 2266, 56 L.Ed.2d 760] (1978); *Dawson v. U.S. Dept. of HUD*, 428 F.Supp. 328 (N D Ga. 1976); *Parlane Sportswear Co. v. Weinberger*, 381 F.Supp. 410 (Mass.1974), aff'd, 513 F.2d 835, 837 (CA1), cert. denied, 423 U.S. 925 [96 S.Ct. 269, 46 L.Ed.2d 252] (1975).

441 U.S. at 48 n.9, 99 S.Ct. at 1579 n.9.

In *Moorer*, the leading case, tenants were evicted by a private developer who had acquired title to their residences for the purpose of rehabilitating and marketing the properties. The developer received interest subsidy payments and FHA insured mortgage financing under § 236 of the National Housing Act, 12 U.S.C. § 1715z–1. HUD refused to grant relocation benefits to the displaced tenants who subsequently brought a class action suit to establish their eligibility as "displaced persons" under the Relocation Act. After the district court certified the case as a class action and granted summary judgment for the tenants, the Eighth Circuit reversed on the issue of the tenants' qualifications as "displaced persons."

The majority opinion examined the purpose, legislative history and structure of the Relocation Act and determined:

> The URA [Relocation Act] was intended to benefit those displaced by public agencies with coercive acquisition power, such as eminent domain. It was intended to benefit individuals who were not willing sellers .... Therefore we conclude the appropriate inquiry in determining whether URA benefits attach in this case is: Was the real property acquired by a governmental entity with the power of eminent domain. 561 F.2d at 182–3.

We are persuaded that *Moorer* applies to the case before us.

In the instant case appellants, like the plaintiffs in *Moorer*, seeks to qualify for relocation benefits under the acquisition clause of § 101(6). Here, acquisition is alleged through activities of a private corporation, Peabody Coal Company, which acquired mining rights through negotiation with appellants' tribe. Appellants' argument that a sufficient nexus of a federal involvement can make the acquisition "a federal program or project" was addressed and specifically rejected in *Moorer*:

> The focus is not on the degree of involvement by a federal or state agency, or a program of such agency, which results in the acquisition, but is instead on whether the person involved was displaced by governmental action either acquiring the property or issuing an order to vacate the property. 561 F.2d at 183.

We follow *Moorer* and hold that appellants do not qualify for benefits as "displaced persons" within the meaning of the Relocation Act.

Our conclusion is buttressed by the fact that every court which has considered this issue since *Moorer*, has applied its test to deny relocation benefits to those displaced by private acquisitions. See, e. g., *Dawson v. Dept. of HUD*, 592 F.2d 1292 (5th Cir. 1979); *Conway v. Harris*, 586 F.2d 1137 (7th Cir. 1978). The facts of this case illustrate that *Moorer* provides a rational rule. The leases here were negotiated between Peabody Coal and the Navajo and Hopi Tribes. Pursuant to the leases and Navajo Tribal Council resolution, it was the function of the tribe to determine the value and ownership of improvements and customary use rights, to pay the claimants and then to be reimbursed by Peabody from a fund maintained with the Superintendent of the Navajo Agency. Peabody has paid substantial damages under these terms. If the provisions were inadequate, the grievance is with the tribe rather than with the government.

Appellants' claim that defendants violated their trust obligation to the tribe is similarly without merit. The existence of this fiduciary obligation does not relieve appellants of the necessity of qualifying as "displaced persons" to receive the statutorily authorized benefits under the Relocation Act.

The district court's award of summary judgment for the federal defendants on both claims for relief was proper, there being no genuine issue of material disputed fact. The judgment of the district court is affirmed. Plaintiffs' claims against the federal defendants are dismissed.

AFFIRMED.