Nancy ISHAM, on behalf of Martha Bryant, deceased, and Beth Strobel, deceased, individually and on behalf of all other persons similarly situated, Plaintiffs-Appellants,

v.

Samuel PIERCE,* in his official capacity as Secretary of the United States Department of Housing and Urban Development; Henry Dishroom, in his official capacity as San Francisco Area Manager of the United States Department of Housing and Urban Development; and YWCA Apartments, Inc., a California non-profit corporation, Defendants-Appellees.

Nos. 80–4355, 80–4299.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 1982.

Decided Dec. 20, 1982.

* Secretary Samuel Pierce is substituted for his predecessor, Moon Landrieu, pursuant to Federal Rule of Appellate Procedure 43(c).

Fred M. Feller, San Francisco, Cal., for Isham.

John R. Reese, Seth R. Jaffe, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for YWCA Apts., Inc.

George C. Stoll, U. S. Atty., San Francisco, Cal., for Landrieu.

Before SNEED and BOOCHEVER, Circuit Judges, and TAKASUGI,** District Judge.

TAKASUGI, District Judge:

## BACKGROUND

This appeal arises from the efforts of a private owner to rehabilitate and convert the YWCA Residence Club ("Residence Club") located in San Francisco, California,

** The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

into a federally subsidized project for lower-income elderly and handicapped tenants. The Residence Club was located in a building owned and operated by the YWCA of San Francisco, a private non-profit corporation ("YWCA"). In 1977, the YWCA applied to the Department of Housing and Urban Development ("HUD") for financial assistance to enable it to convert the Residence Club into housing for the elderly and handicapped. HUD approved the application on September 20, 1977.

Between February and May of 1979, the Residence Club tenants were notified by the YWCA that they would be required to vacate the premises to allow for the rehabilitation and conversion as proposed. The occupants of the Residence Club relinquished their tenancy, either as a result of notices from the YWCA, or, in some cases, through state court unlawful detainer proceedings initiated by the YWCA. Appellant Beth Strobel vacated the Residence Club in compliance with these notices. Appellant Martha Bryant was ordered to vacate the Residence Club following a court order in an unlawful detainer action brought against her by the YWCA.[1] The alleged class of plaintiffs consists of a total of approximately 145 persons who were forced to vacate as a result of the Apartment Conversion Project.[2]

On July 5, 1979, the YWCA formed YWCA Apartments, Inc. ("Apartments, Inc."), a private non-profit corporation, to act as the entity that would formally manage the housing project. Membership in Apartments, Inc. was limited to members of the board of directors of the YWCA. Upon the dissolution of Apartments, Inc., any remaining assets were to revert back to the YWCA. On November 1, 1979, the YWCA leased the building to Apartments, Inc. for 75 years in order to allow it to develop, manage and operate the new housing project.

The development and construction of the Apartment Conversion Project was to be financed entirely through a direct low interest loan in the amount of $5,593,900 to Apartments, Inc. from HUD pursuant to Section 202 of the Housing Act of 1959, 12 U.S.C. § 1701q. In addition, Apartments, Inc. received a grant from the City of San Francisco of HUD Community Development Block Grant ("CDBG") funds in the amount of $642,000.[3] All of the apartment units are to be allocated rent subsidy payments from HUD under Section 8 of the Housing Act of 1937, as amended, 42 U.S.C. § 1437f.[4] The amount of HUD's annual Section 8 funds reservation for the project is $774,996. Pursuant to regulations promulgated by HUD, Apartments, Inc.'s project must conform with HUD specifications.

An enormous amount of reconstruction was required in order to rehabilitate the Residence Club building and convert approximately 160 sleeping rooms into 98

1. By orders of this court on January 6, 1981 and January 15, 1981, Nancy Isham was substituted as appellant on behalf of Martha Bryant and Beth Strobel who are now deceased.

2. The action did not progress to the stages of class certification before being dismissed by the district court.

3. The CDBG program is authorized pursuant to Title I of the Housing and Community Development Act of 1974, 42 U.S.C. §§ 5301 et seq.

4. The Section 8 program was established by Congress as part of the Omnibus Housing and Community Development Act of 1974, 42 U.S.C. §§ 1437f et seq., and was created to alleviate the acute shortage of decent, safe and sanitary dwellings for lower income families. Section 8 was designed to provide a profit incentive for private developers to participate in the construction and management of lower income housing by using monthly housing assistance payments in the form of rent subsidies. These payments subsidized the owner with the difference between the fair market value of the rental unit and approximately 25 percent of the renter's monthly income. See 42 U.S.C. §§ 1437f(b)(2), (c)(3); 24 C.F.R. §§ 883.204, 883.204–.206 (1977).

apartments. It was therefore necessary for the YWCA to vacate the building during the renovation. The Secretary of HUD determined that the existing tenants were not eligible for the benefits provided by the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601–4655 ("URA"), and, therefore, the appellants' moving expenses were not subject to federal relocation assistance.

After exhausting their administrative remedies, appellants filed this class action on December 21, 1979, in the District Court for the Northern District of California against the Secretary of HUD, Moon Landrieu, the HUD San Francisco manager, Henry Dishroom and Apartments, Inc. Appellants sought a judgment declaring that appellees were obligated to minimize the effects of displacement in accordance with the requirements of HUD regulations governing the Section 202 and Section 8 programs and that appellees were obligated to provide benefits and assistance under the URA. Appellants also sought an order enjoining appellees from proceeding further on the project until appellants were provided with the benefits, assistance and protections to which they were entitled. They further prayed to enjoin HUD from enforcing its regulations purporting to exempt the Apartment Conversion Project from the provisions of the URA.

Apartments, Inc. filed a motion to dismiss the complaint under Federal Rules of Civil Procedure, Rule 12(b)(6). The district court concluded that the complaint failed to state a claim upon which relief could be granted against Apartments, Inc. because (1) the subject project was owned and operated by a private party and no applicable law provided for relocation assistance or benefits for persons displaced by such projects, and (2) plaintiffs had not, and could not, allege any facts that would give rise to a claim against Apartments, Inc. under the Fifth Amendment of the United States Constitution. The court also determined that the allegations of other facts consistent with the complaint could not possibly cure the foregoing deficiencies.

The federal defendants filed a motion for summary judgment on all causes of action. Appellants, in opposing the motion for summary judgment, treated the motion as a motion to dismiss. The district court held that appellants were not entitled to benefits under the URA because there was no acquisition within the meaning of the URA and appellants were not entitled to URA benefits because they were not displaced by a government agency. The court also ruled that the Section 202/Section 8 regulations do not provide relocation assistance or protections.

The judgment dismissing appellants' complaint against Apartments, Inc. was entered on May 16, 1980. Judgment on the federal defendants' motion for summary judgment was entered on June 24, 1980. Upon appellants' motion the appeals were consolidated by order of this court filed July 25, 1980.

## DISCUSSION

■ The primary issue in this appeal is whether the provisions of URA apply to a situation where a private party undertakes a federally assisted program or project which does not entail the acquisition of property by a government entity.[5] Section 201 of the URA provides:

---

5. Appellees contend there was no *acquisition* by a private party, federal agency or state agency because YWCA leased the premises to Apartments, Inc. for 75 years and Apartments, Inc. was formed only as a borrower entity by YWCA. Apartments, Inc. contends that assuming there was an acquisition, the acquisition did not displace the tenants because the tenants were evicted before the signing of the lease.

The 75-year lease of the subject property from the YWCA to Apartments, Inc. has transferred possession and control of the property from an independent entity to another entity. HUD

The purposes of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole. 42 U.S.C. § 4621. The operative provisions of the URA guarantee relocation assistance, moving expenses, dislocation allowances and, in some cases, payments for replacement housing to "displaced persons." *See* 42 U.S.C. §§ 4622, 4623, 4625, 4630.

Appellants contend they are displaced persons within the meaning of the URA. Section 101(6) defines a displaced person as

any person who, on or after January 2, 1971, moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance; and solely for the purposes of Sections 4622(a) and (b) and 4625 of this title, as a result of the acquisition of or as the result of the written order of the acquiring agency to vacate other real property, on which such person conducts a business or farm operation, for such program or project.

42 U.S.C. § 4601(6).

It is appellants' contention that the plain language of 42 U.S.C. § 4601(6) indicates that the test is whether the acquisition is for a federal program or project undertaken by a federal agency, or with federal financial assistance. They cite numerous provisions of the URA for the proposition

that there is nothing in the statutory framework which imposes a requirement that the acquisition must be by a government entity nor is there language which excludes federal programs or projects in which private parties participate.[6]

Appellees contend that the language in 42 U.S.C. § 4601(6), *"as a result of the acquisition of such real property, . . . or as a result of the written order of the acquiring agency* to vacate real property, for a program or project undertaken by a federal agency, or with federal financial assistance," indicates that the Act contemplates an acquisition by an agency of the federal government or of the state or local government. Appellees assert that if Congress intended to include acquisitions by private parties, then Congress would have inserted the word "entity" for the term "agency" to allow relocation assistance to displaced persons when private action is involved.

The statutory framework of the URA demonstrates that the Act applies only to those situations where one is displaced by a federal or state agency. 42 U.S.C. § 4625(b) provides:

Federal agencies administering programs which may be of assistance to displaced persons covered by this chapter shall cooperate to the maximum extent feasible with the *Federal or State agency causing the displacement* to assure that such displaced persons receive the maximum assistance available to them. (Emphasis added.)

Sections 4627 and 4628 of Title 42 mandate benefits "[w]henever real property is acquired by a State agency" incidental to a federal program. Section 4628 specifically provides that the acquisition of real property by a state agency at the request of a

---

regulations define any lease of fifty years or more as an acquisition. *See* 24 C.F.R. § 42.-101(b) (1982). Appellees' argument that the acquisition did not displace the tenants because the tenants were evicted before the signing of the lease is without merit. To sustain such an argument would frustrate the purposes of the URA and provide an easy path circumventing any displaced person's claim for relief. Although the lease should be considered an acquisition, the crucial inquiry is whether it was an

acquisition within the meaning of the URA for which relocation assistance must be provided.

**6.** Appellants rely principally on the general language contained in sections 4622(a), 4625(a) and 4630 of Title 42. Contrary to appellants' contentions, these sections specifically address projects undertaken by federal or state agencies. There appear to be no statutes which deal with private acquisitions.

federal agency for a federal program or project shall be deemed an acquisition by a federal agency for the purpose of the URA. It appears that if Congress had intended the URA to cover private developments receiving HUD loans, then these sections would have been the appropriate place to state that such a private acquisition would be deemed an acquisition within the meaning of the URA.

The legislative history of the URA demonstrates that Congress was concerned with acquisitions accomplished through the power of condemnation by federal agencies and state and local public agencies receiving federal financial assistance. At the opening of Senate hearings on Senate Bill 1 (S.1), which eventually became the URA, Senator Muskie, Chairman of the Subcommittee in which the bill was considered, issued a statement which included the following:

> Today we begin hearings on legislation to establish a uniform policy with respect to relocation assistance in land acquisition involving federal and federally assisted programs.
>
> . . . .
>
> Our primary objective in sponsoring S.1 is to establish a uniform policy among Federal agencies, and State and local recipients of Federal funds in their dealings with property owners and others displaced by Federal or federally aided land acquisitions.

Hearings Before the Subcomm. on Intergovernmental Relations of the Senate Comm. of Governmental Operations, 91st Cong., 1st Sess., Vol. 1, at 1–2 (1969). Senator Moss, in support of the bill, stated:

> It requires the State and local governments administering Federal grants must assure the availability of standard housing *before proceeding with property acquisition* that displaces people. (Emphasis added.)

*Id.* at 162.

Hearings on S.1 were also held before the House Committee on Public Works. The concern which was voiced in the House was that S.1, as it was passed by the Senate and subsequently approved by the House of Representatives, did not include coverage for persons who were displaced by land acquisition by private parties using federal funds. House Representative Edith Green stated:

> I would like to call to the attention of the committee one other fact that relocation payments, by reason of displacement under the Higher Education Facilities Act, will not be solved if this comprehensive bill relates only to Federal programs of and or acquisition of land by a state unit under the Federal program.

Hearings Before the Committee on Public Works of the House of Representatives, 91st Cong., 2nd Sess., Vol. 3 at 59 (1970). House Representative Ryan expressed the same view:

> The effect upon the affected individual is the same whether he is displaced as a result of the action of a Federal agency, a State agency using Federal assistance, a local public agency, or a private institution using a Federal grant or loan program.
>
> A need for a uniform policy for Federal agencies and State agencies using Federal assistance is recognized in S.1 which the Senate passed. But, the problem of displacement by private institutions through federally assisted programs requires a legislative solution.
>
> . . . .
>
> The Senate has passed S.1, but it does not touch the problems of displacement caused by federally assisted expansion of private institutions.

*Id.* at 98, 100.

Since the URA was enacted there have been numerous unsuccessful attempts to amend the Act in order to provide a solution to the problems raised by House Representatives Green and Ryan. Senator Muskie, sponsor of the URA as it was enacted, reported to the Senate Committee on Government Operations, S. 261, S.Rep. No. 93–10, 93rd Cong., 1st Sess. (1973) (the proposed amendment to the URA). Senator Muskie stated:

The Uniform Relocation Assistance and Real Property Acquisition Act of 1970 now provides benefits to persons displaced by the acquisitions of real property by a Federal agency or a State or State agency acquiring the real property as a required contribution incidental to a Federal program or project. S.261 amends the Act to extend benefits to persons displaced by eight specified Federal programs which may be undertaken by persons other than a Federal agency or a State or State agency.

It was the intent of Congress to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of all Federal and federally assisted programs and projects. However, the manner in which the Uniform Relocation Act is written *excludes persons displaced by Federal projects undertaken by any entity other than an agency of the Federal Government, a State or State agency.* (Emphasis added.)

*Id.* at 7.

Upon review of the legislative history of the Act and the subsequent attempts to amend the Act, it appears that benefits for displaced persons under the URA are to apply only to persons displaced by a federal agency, state agency or local governmental body. Despite the broad language of 42 U.S.C. § 4621, the operational sections of the Act are more narrowly drawn. Appellants have not been displaced by the acquisition of real property by a federal or state agency nor have appellants been provided with written notice to vacate by a federal or state agency with the power of eminent domain.

Various circuit courts have dealt with similar issues as to whether the URA provides benefits to individuals displaced by private institutions funded by federal loans or grants. In *Moorer v. HUD,* 561 F.2d 175 (8th Cir.1977), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978), displaced tenants sought relocation benefits when they were forced to vacate apartments because of rehabilitation work required on buildings by a private party which had received federal financial assistance under section 236 of the National Housing Act in the form of rent subsidy payments and FHA mortgage insurance. The court held that tenants displaced by private acquisitions and private orders to vacate on projects funded by federal financial assistance were not "displaced persons" entitled to relocation benefits under the URA. *Id.* at 183.

In *Conway v. Harris,* 586 F.2d 1137 (7th Cir.1978), tenants were evicted by a private party who was developing a senior citizens housing project. The private party contracted with HUD to receive Section 8 housing assistance payments following completion of the new housing construction. The issue presented was whether a person dispossessed from real property by a private acquisition, which leads to the construction of a Section 8 housing project, is a "displaced person" under 42 U.S.C. § 4601(6). The Seventh Circuit indicated that the criteria for determining if a person was entitled to relocation benefits was whether the property was acquired by a federal or state agency and whether a written order to vacate the premises was issued by a federal or state agency. The court concluded:

In this case the private entity Architektur-80 acquired the property from a private party, and a private entity issued the plaintiff a written order to vacate the premises. Thus plaintiff plainly fails both the acquisition and notice tests of 42 U.S.C. § 4601(6). Architektur-80 negotiated with the Wisconsin Finance Authority so that following the completion of the new housing project for the elderly, Architektur-80 would receive Section 8 rental assistance payments from HUD. These facts demonstrate a series of private, not governmental, decisions. Although there is some degree of federal and state involvement, we must reject plaintiff's fanciful causation theory that the government somehow acquired the property.

586 F.2d at 1141. As in *Conway,* it is equally clear that appellants have failed both the acquisition and notice tests as set forth in 42 U.S.C. § 4601(6).

Appellants assert that the project is covered by the URA because it is a program undertaken with federal financial assistance within the meaning of the Act.[7] Notwithstanding the fact that there was no governmental acquisition or notice to vacate by a governmental body, appellants argue that the financial assistance to Apartments, Inc. provides a nexus of federal involvement to transform the acquisition into a federal project. Appellants claim that the URA coverage extends to those situations where tenants are displaced by a private party who receives federal financial assistance. This argument has been addressed by the Ninth Circuit in *Austin v. Andrus,* 638 F.2d 113 (9th Cir.1981). In *Austin,* the Ninth Circuit approved of *Moorer v. HUD,* 561 F.2d 175 (8th Cir.1977), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978), which rejected the argument that a federal agency's degree of involvement through financial assistance could transform the acquisition into a federal program or project.

> The focus is not on the degree of involvement by a federal or state agency, or a program of such agency, which results in the acquisition, but is instead on whether the person was displaced by governmental action either acquiring the property or issuing an order to vacate the property.

*Austin v. Andrus,* 638 F.2d at 116, citing *Moorer v. HUD,* 561 F.2d at 183.

Relocation benefits for displaced tenants resulting from projects undertaken with federal financial assistance apply only when federal financial assistance is provided to a state agency which acquires real property or gives notice to vacate. In *Parlane Sportswear Co., Inc. v. Weinberger,* 513 F.2d 835 (1st Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 252 (1975), Tufts University purchased a building from Parlane but continued to lease the premises to Parlane. The National Institute of Health, a subsidiary division of HEW, awarded substantial grants to Tufts under 42 U.S.C. §§ 281 *et seq.* and 42 U.S.C. §§ 291 *et seq.* for personnel, equipment, alterations and renovations to expand Tufts' medical teaching facilities and to establish a cancer research center. Tufts evicted Parlane who subsequently sought relocation assistance from HEW under the URA. Parlane argued that the phrase "federal financial assistance" appearing in the statutory definition of displaced persons, 42 U.S.C. § 4601(6), demonstrated an intent to include all projects which receive federal funds. The court determined that the phrase "Federal financial assistance" was intended to cover only such assistance to state agencies. *Id.* at 837; *cf. Dawson v. United States Department of Housing and Urban Development,* 428 F.Supp. 328 (N.D. Ga.1976), *affd.,* 592 F.2d 1292 (5th Cir.1979). This conclusion is reinforced by 42 U.S.C. § 4633(b)(3) which provides:

> [T]hat any person aggrieved by a determination as to eligibility for a payment authorization by this Chapter, or the amount of payment may have his application reviewed by the head of the Federal agency having authority over the applicable program or project, *or in the case of a program or project receiving Federal financial assistance, by the head of the state agency.* (Emphasis added.)

Appellants contend that since the apartment conversion project is financed in part by a $642,000 grant of CDBG funds which the City of San Francisco received from HUD pursuant to 42 U.S.C. §§ 5301 *et seq.,* appellants should receive benefits because HUD granted funds to the City for its development needs which in turn granted the funds to Apartments, Inc.[8] Appellants

---

7. 42 U.S.C. § 4601(4) defines federal financial assistance to include a "grant, loan or contribution." Apartments, Inc. has received a loan under Section 202, subsidized rents under Section 8, and CDBG funds derived from a HUD grant to the City of San Francisco.

8. 24 C.F.R. § 570.3(f) (1977) defines a Community Development Program as "[t]he program formulated by the applicant in its application to HUD ... which (1) includes the activity to be undertaken to meet its community development needs and objectives identified in its summary community development plan." The apartment conversion project must be consist-

ignore the fact that the URA is only applicable when the federal financial assistance is provided to a state agency for a specific program or project. CDBG funds are provided to local governments to use at their discretion as long as their use is consistent with the guidelines established by the underlying statute or applicable regulations. In *Young v. Harris,* 599 F.2d 870 (8th Cir.), *cert. denied,* 444 U.S. 993, 100 S.Ct. 526, 62 L.Ed.2d 423 (1979), the private developer received, in addition to mortgage insurance, the right to exercise the power of eminent domain, property tax abatements, and a commitment from the City of St. Louis to contribute CDBG funds. The Eighth Circuit rejected the argument that appellants assert here, indicating that the grant of the funds to a private developer did not render the private developer's project a joint undertaking for which relocation assistance under the URA was applicable. The court concluded that "[i]n any event, federal financial assistance to a private project is insufficient to bring the project into the realm of the URA." *Id.* at 878. There is nothing in the URA or the legislative history of the Act to suggest a conclusion to the contrary. Had the City of San Francisco acquired the property or issued a notice to vacate, then appellants would be in a different posture.

■ We next address the issue as to whether the Section 202/Section 8 program regulations require defendants to mitigate the effects of displacement. Appellants contend that in Apartments, Inc.'s applications to HUD for Section 202 construction loan funding and in its preliminary proposal for Section 8 substantial rehabilitation funding, Apartments, Inc. failed to show how assistance would be provided to persons displaced by the conversion project, thereby failing to demonstrate that relocation was feasible and that no displacement would occur until tenants were offered comparable replacement housing. Appellants assert that appellees HUD (Landrieu

and Dishroom), in approving the application for Section 202 and Section 8 funding, did not comply with the provisions of 24 C.F.R. § 885.310(h) (1977) and 24 C.F.R. § 881.-113(a) (1977). In so doing, appellants contend HUD officials have deprived appellants and the class they represent of the displacement protections afforded them pursuant to said regulations.

The preliminary proposal submitted by a borrower to HUD must include: "[a] statement whether the proposed project will displace site occupants. If so, the Proposal shall ... establish that there is a feasible plan for relocation and shall include how any necessary relocation will be funded." 24 C.F.R. § 885.310(h) (1977).

24 C.F.R. § 881.113(a) (1977) provides guidelines for evaluating and selecting proposals transmitted by applicants:

In the evaluation or selection of Proposals, consideration shall be given to whether there are site occupants who would have to be displaced, whether the relocation of site occupants is feasible, and the degree of hardship which displacement might cause. Greater weight shall be given to proposals which do not require displacement, or, where displacement is required which will involve the least amount of hardship.

Appellants contend the purpose and effect of these regulations was to require the applicant to reveal and mitigate potential displacement problems and HUD to consider the adequacy of relocation measures in evaluating, approving or conditioning Section 202/Section 8 grants. Appellants claim that if appellees had complied with these regulations, appellees would not have been funded, or, if funded, an adequate relocation fund would have been implemented.

These regulations do not provide any protection for appellants beyond those available under the URA.[9] The regulations do

ent with San Francisco's plan, required by HUD, which describes the projects as strategies to be undertaken by the City with CDBG funds. *See* 24 C.F.R. §§ 570 (1977) *et seq.*

9. There are Section 8 regulations which do authorize relocation benefits, but they expressly state that such benefits shall be provided pursuant to the URA. However, these regulations

not grant any substantive rights but are merely programmatic requirements which must be followed in applications to allow a comparison of one proposal to another.[10] HUD is required to give consideration to any displacement before approval of funding but there is no requirement that HUD reject applications which cause displacement.

## CONCLUSION

In light of the legislative history, case law and statutory provisions concerning the URA, appellants have failed to state any claims upon which relief can be granted. The threshold issue is whether the real property was acquired by a federal agency or a state agency receiving federal financial assistance. The URA does not provide for those situations in which private developers acquire property with federal financial assistance. The conversion of the Residence Club was not undertaken by a federal agency or a state agency but by and through the YWCA and Apartments, Inc. Although there is some degree of federal and state involvement, the activities of Apartments, Inc. and the City of San Francisco are not sufficiently intertwined to characterize them as one project undertaken by a state instrumentality. The judgment of the district court is affirmed.

were promulgated in 1978 which is after the time frame relevant to the issues of this case. *See* 24 C.F.R. §§ 881.209(G)(8), 883.210(b), 883.712 (1978) (these regulations relate to PHA-owned Public Housing Agency Projects in which there is a governmental nature to the projects which is absent in the instant case).

**10.** In support of HUD's motion for summary judgment, HUD attached a document from YWCA that was entitled "Plan for Relocation of Residence Living at 940 Powell Street." It does appear that Apartments, Inc. complied with the regulations concerning applications for preliminary proposals.