**HIGHWAY PAVERS, INC., Plaintiff,**

v.

**SECRETARY, UNITED STATES DEPARTMENT OF the INTERIOR, Defendant.**

No. 86–1367–Civ.

United States District Court, S.D. Florida, Miami Division.

Dec. 15, 1986.

Joseph Lawrence II, Cummings & Lawrence, Tallahassee, Fla., for plaintiff.

Robyn Hermann, Asst. U.S. Atty., Miami, Fla., for defendant.

## ORDER AFFIRMING THE ADMINISTRATIVE DETERMINATION

JAMES LAWRENCE KING, Chief Judge.

THIS CAUSE arises before the Court upon the Plaintiff's petition for judicial review of the final administrative determination of the Office of Hearings and Appeals, United States Department of Interior. This Court has jurisdiction pursuant to 5 U.S.C. §§ 701–706.

The Plaintiff, Highway Pavers, Inc., seeks judicial review of an Office of Hearings and Appeals decision denying the Plaintiff's claim for benefits under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 *et seq.* [hereinafter referred to as the Uniform Relocation Act]. Particularly, the Plaintiff filed a claim under § 4622 of the Uniform Relocation Act, which provides compensation for relocation costs incurred as a result of the government's acquisition of real property. In its initial claim Highway Pavers sought compensation for two types of "Moving and Related Expenses": reimbursement in the amount of $6,413 for costs of moving business equipment from the real property and compensation in the amount of $176,800 for actual direct losses of personal property, stockpiles of limerock and boulders. This original claim was filed by Highway Pavers, as owner of the relocated business Ochobee Rock, Inc., on September 9, 1981. The first claim was initially ruled untimely, but, upon request of Highway Pavers, the Department reconsidered and reviewed the merits of the claim. Upon review, the claim was denied by the National Park Service, seemingly basing its decision on Highway Pavers' insufficient showing of actual ownership of the property at the time of the government acquisition.

An appeal was taken from the July 18, 1983 denial on the merits to the Department of Interior, Office of Hearings and Appeals. A hearing was conducted, substantial evidence was received, and an administrative order was subsequently prepared by the Presiding Officer. This administrative decision is the subject of judicial review. In order to properly assess the validity of the administrative decision denying benefits, it is necessary to outline the significant undisputed facts leading up to Highway Pavers' September, 1981, filing for relocation costs under the Uniform Relocation Act.

## CHRONOLOGY OF EVENTS

The real property upon which the severed rocks, boulders, and equipment were located is a tract of land near Ochobee, Florida. This property was sold by Dr. and Mrs. Charles W. Caldwell to Ochobee Rock, Inc. in 1974, with the Caldwells holding a mortgage. The property was occupied by Ochobee Rock from January 1974 through May of 1977, and was operated by Ochobee Rock as a limestone quarry. In 1977, the Caldwells instituted a foreclosure action

against Ochobee Rock for default on the mortgage, which resulted in a final judgment being entered against Ochobee Rock on February 17, 1977. The property was sold and purchased back by the Caldwells on April 4, 1977. At that time all of Ochobee Rock's rights and interests on the real property were extinguished.

The government subsequently conducted eminent domain proceedings to acquire the property as part of Big Cypress National Preserve. On December 18, 1979, over two years after the foreclosure sale, an eminent domain judgment was entered on this parcel and title vested in the Government in January of 1980. It is uncontested that Ochobee Rock moved the equipment referred to in its claim prior to the government's acquisition of the property and without receiving any notice from the government to vacate. It is also uncontested that neither Ochobee Rock nor Highway Pavers made any effort, at the time Ochobee lost all rights to possess the real property, to move the stockpiled materials to a parcel in which it had any present possessory right. Nor did it attempt to sell the materials, or to enter into an agreement with the current owner to allow the personal property to remain on the tract. In summation, after Ochobee lost the property in the 1977 foreclosure, no action was taken by either Ochobee Rock or Highway Pavers to protect its interest in the stockpiled materials until 1981, when the claim was filed with the Department of Interior. Ochobee did remove its valuable equipment from the property in 1977, the same year that it lost its rights to possession of the real property.[1]

OWNERSHIP OF STOCKPILED MATERIALS

Before addressing the Uniform Relocation Act and its application to the circumstances of this case, the issue of ownership of the stockpiled materials should be addressed. The main thrust of Highway Pav-

ers' appeal to this Court is that it owned the stockpiled materials and is entitled to payment for those materials by virtue of its ownership. The Presiding Officer did not agree with Highway Pavers' position that it owned the stockpiled materials at the time of the government acquisition, either by virtue of the security interests Highway Pavers held in the materials, or by virtue of its ownership of Ochobee Rock. Accordingly, Highway Pavers now argues that the Presiding Officer's conclusion of nonownership is erroneous and unsupported by the record; therefore, the administrative order must be set aside.

It is apparent that both the Plaintiff and the Department of Interior considered the question of ownership relevant to the determination of benefits. While it is true that a determination, properly supported by the record, that the Plaintiff did *not* own the stockpiled materials would effectively preclude it from obtaining relocation expenses, it does not necessarily follow that a determination that it owned the materials would automatically entitle it to benefits under the Act. In other words, assuming *arguendo* that the evidence supports a finding that Highway Pavers had ownership rights in the stockpiled materials at the time of the government acquisition in 1980, this finding does not automatically entitle Highway Pavers to relocation benefits.

A decision denying a claim for relocation benefits must be affirmed unless found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. *Starke v. Secretary, United States Department of Housing and Urban Development*, 454 F.Supp. 477 (W.D. Okla.1976). Thus, even if the legal conclusion regarding ownership was incorrect the determination will be upheld if it otherwise conforms with the standard and the evidence supports the correctness of the final determination denying the benefits.

---

1. It should be noted that Highway Pavers disagrees with the denial of benefits for moving the equipment but has chosen not to argue the point on appeal. In the interest of thorough-

ness, this Court approves the administrative interpretation of the statute and the denial of this aspect of the claim.

UNIFORM RELOCATION ACT

In evaluating whether the Plaintiff has properly brought a claim under the Uniform Relocation Act, it is necessary to understand the purpose and qualifications of the Act. The Act states:

> The purpose of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced *as a result* of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole. 42 U.S.C. § 4621 (emphasis added).

The particular section, entitled Moving and Related Expenses, under which the Plaintiff sought compensation for the expense of moving business equipment and direct losses of tangible personal property provides:

> Whenever the acquisition of real property for a program or project undertaken by a Federal agency in any State *will result* in the displacement of any person ... the head of such agency shall make payment to any displaced person ... for—
> (2) actual direct losses of tangible personal property as a result of moving or discontinuing a business ... but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property.... 42 U.S.C. § 4622 (emphasis added).

It is uncontested that the government did not issue any written order or request to vacate the property. Therefore, the same causal connection required by the language of § 4622 is contained in the definitional section as well.

In order to qualify for payment of benefits provided for in § 4622, the relocated individual or business must meet the statutory definition of a "displaced person", as set forth below:

> (6) The term "displaced person" means any such person who, on or after January 2, 1971, moves from real property, or who moves his personal property from real property, *as a result of* the acquisition of such real property, ... or as a result of the written order of the acquiring agency to vacate the real property,.... 42 U.S.C. § 4601(6) (emphasis added).

■ The plain language of the Act's purpose statement, the general provision authorizing payment for moving and related expenses, and the definitional section requires a causal connection between the displacement and the government's actual acquisition of the land. This causal connection requires that the relocation or discontinuance of the business occur as a direct result of the government acquiring the land upon which the business is located. *Day v. City of Dayton, Ohio*, 604 F.Supp. 191 (S.D. Ohio 1984). If the business ceases operating or relocates for some reason other than the government actually acquiring the underlying land then this causal connection is not satisfied and the business is not entitled to any payment. The clear language of the Act manifests that the provisions providing for moving and related expenses are intended to provide assistance for a distinct group of persons required to move their business because of the government program requiring acquisition of the land. The Plaintiff does not fall within this distinct group. Therefore, the legal conclusion that Highway Pavers or Ochobee Rock is not a displaced person, under the Act, is not clearly erroneous or otherwise not in accordance with the law.

The Plaintiff lost its right to possess the land and the corresponding right to conduct a business thereupon as a result of a foreclosure action that concluded with the sale of the real property on April 4, 1977. The fact that Ochobee may have made a business decision, for any reason, to leave its personal property on land in which it had no right to possess, use, or enjoy, in no way changes this analysis. Ochobee discontinued its quarry operation on the property later acquired by the government because it had no right to continue mining limestone on the property after April 1977. The government acquired the property as part of Big Cypress National Preserve pro-

gram over two years later. The uncontroverted evidence in the record shows that Ochobee lost *all* rights to the real property in April 1977, removed some equipment on its own volition, and took no other action to protect its interests regarding the stockpiled materials until filing a claim with the government.

 The determination of whether a business is a "displaced person" under the Act should be made in light of the purpose of the Act. *See, Day v. City of Dayton, Ohio*, 604 F.Supp. 191 (S.D.Ohio 1984). In a situation analogous to the case at bar, the Supreme Court held that tenants forced to relocate by foreclosure on housing projects with federally guaranteed financing are not "displaced persons". *Alexander v. U.S. Department of Housing and Urban Development*, 441 U.S. 39, 99 S.Ct. 1572, 60 L.Ed.2d 28 (1979). In *Alexander*, the party instituting foreclosure was the government. In light of the specific purpose of the statute, the government's involvement, alone, did not fulfill the causal requirement. *Id.*

The causal requirement was directly addressed in *Dawson v. U.S. Department of Housing and Urban Development*, 428 F.Supp. 328 (N.D.Ga.1976). The *Dawson* court found that the proximate cause of the Plaintiff's displacement was the decision by the building owner to sell the property to a private developer. *Id.* Continuing, the Court stated, "While the decision of her [the Plaintiff] landlord may have been influenced by the urban renewal activities ... her dislocation was not the 'direct result' of these activities." *Id.* Accordingly, the Court found the Plaintiff was not entitled to relocation benefits. On appeal, the 11th Circuit Court of Appeals affirmed the District Court's denial, holding that the government need not pay relocation benefits to a party forced to move by a private developer. *Dawson v. U.S. Department of Housing and Urban Development*, 592 F.2d 1293 (11th Cir.1979).

 The cases discussed above illustrate that the causal relationship required by the statute is strictly interpreted by the Court.

Absent sufficient evidence that an individual or business moved as a *direct* result of the government's acquisition program, the claimant is not a displaced person entitled to benefits under the Relocation Act. The Presiding Officer could not find on the basis of the record that Ochobee Rock relocated its quarry operations as a direct result of the government's acquisition of the underlying real property. Accordingly, the Presiding Officer's determination that Highway Pavers was not a displaced person under the statute is proper. Given that the administrative decision to deny the claim for relocation payments is supported by the record and otherwise in accordance with the law, said decision is affirmed.

Accordingly, after a careful review of the record, and the Court otherwise being fully advised in the premises, it is:

ORDERED and ADJUDGED that the administrative determination denying the Plaintiff benefits under the Uniform Relocation Act is affirmed and the case is dismissed.